[Civ. No. 15612.   Second Dist., Div. One.   June 3, 1947.]

GEORGE J. BUSCH, Respondent, v. RAE TRUITT, as Administratrix, etc., Appellant.

Haight, Trippet & Syvertson for Appellant.

Macdonald, Wallace, Cashin & Arrington for Respondent.

DORAN, J.—This is an appeal from two orders made after judgment, namely, an order denying the defendant's motion to discharge a writ of execution; and a subsequent order denying defendant's motion for satisfaction of judgment. Two questions are involved.   The first relates to the validity of an execution issued upon what is claimed to be ''a judgment rendered against an executor or administrator, upon any claim for money, against the estate.''   The second question concerns a defendant's right to tender in satisfaction of a judgment, something other than the stock described in such judgment.

In reference to the first question, section 730 of the Probate Code, quoted above, provides that such a judgment ''conclu-

sively establishes the validity of the claim . . . and the judgment must be that the executor or administrator pay, in due course of administration, the amount ascertained to be due. This section contains the further provision that "No execution shall issue upon the judgment, nor shall it create any lien upon the property of the estate, or give the judgment any priority of payment."

The complaint herein, contained two causes of action against the appellant as administratrix of the estate of Charles C. Truitt, deceased. The first cause of action alleged that the deceased, by virtue of a certain writing, held 1,380 shares of stock of Dried Food Products, a California corporation, in trust for the plaintiff. The second count alleged that plaintiff had filed a creditor's claim in the Truitt estate for the said stock. The complaint prayed for judgment "that the Estate . . . holds in trust for the plaintiff" stock in question; and "that plaintiff have judgment for the recovery of said stock or its value on November 16, 1942, in the sum of $5,520.00."

At the trial, Judge Stutsman rendered judgment "that Plaintiff do have and recover of and from the defendant, Rae Truitt, as Administratrix of the Estate of Charles C. Truitt, Deceased, 1380 shares of the capital stock of the Dried Food Products Company, a Corporation, and that said defendant is hereby ordered to transfer and deliver certificates representing said 1380 shares of stock to the plaintiff forthwith, *or in case that said 1380 shares are not delivered forthwith then that plaintiff do have and recover of and from the defendant . . . $5,520.00 dollars, the value thereof, together with interest as provided by law.*" (Italics added.) On appeal, this judgment was reversed by the District Court of Appeal (70 A.C.A. 177, 160 P.2d 925). After a hearing in the Supreme Court, the judgment of the trial court was affirmed. (27 Cal.2d 889 [163 P.2d 739].)

After the judgment became final, demand was made that appellant deliver up the stock according to the terms of the judgment; the identical stock, however, was never delivered or tendered due to the fact that the corporation had then been dissolved, as will hereinafter be more fully set forth. Respondent then took out an execution to enforce payment of the money part of the judgment, namely $5,520, representing the value of the stock. In the law and motion department of the superior court, Judge Paonessa then denied appellant's motion to discharge the writ of execution, such motion being

based upon the ground that, under section 730 of the Probate Code previously referred to, the execution was invalid. Thereafter, Judge Stutsman, who had rendered the original judgment, denied a further motion by appellant asking the court to order satisfaction of the judgment on the ground that appellant had tendered the ''proceeds'' of the stock described in the judgment. The present appeal questions the propriety of both orders.

The record discloses that the Dried Foods Products Company, previously engaged in the manufacture of dried eggs, had, prior to March 31, 1941, licensed its patents to Armour & Company. Thereafter Dried Food Products Company carried on no active business, and assigned the Armour contract, its only asset, to another company known as ''Food Products Corporation,'' the Armour contract also being the sole asset of the latter corporation. It is likewise to be noted that July, 1942, the only asset of the Dried Food Products Company was all of the stock of Food Products Corporation. Subsequently, Dried Food Products Company distributed this asset to its stockholders, each shareholder in Dried Food Products receiving a fractional amount of stock in Food Products Corporation. Thereafter, Food Products Corporation distributed its only asset, the Armour contract, to its shareholders. The Armour agreement was placed in escrow at the Citizens National Bank which collected the royalties and distributed these proceeds to the aforesaid owners of fractional interests in the agreement. Both the Dried Food Products Company and Food Products Corporation were legally dissolved on December 30, 1944, which date, it should be noted, was after the rendition of judgment by Judge Stutsman on June 20, 1944, but before the affirmance of such judgment by the Supreme Court on November 27, 1945.

It further appears that after the judgment had become final, and on December 29, 1945, appellant delivered to respondent's attorney the sum of $2,011.32 representing dividends received by appellant, with interest; that appellant tendered to respondent, not the stock of Dried Food Products Company as ordered by the judgment, but what appellant denominates as the ''proceeds'' of such stock, namely, 161.7386 shares of Food Products Corporation stock and an interest of 0.54767 per cent of the Armour agreement which was in escrow at the Citizens National Bank. Respondent refused to accept these ''proceeds'' in satisfaction of the judgment, and demanded that, since it was impossible for appellant to

deliver the identical stock specified in the judgment, appellant should pay the value thereof as ordered by such judgment, the sum of $5,520. Thereafter occurred the issuance of execution, and the two motions in reference thereto, as hereinbefore related.

It is appellant's contention that the first order, refusing to discharge the execution, "was improper because by it the Respondent was permitted to execute upon the assets of the estate of a decedent upon a judgment rendered against an administratrix upon a claim for money against the estate of her intestate," in violation of section 730 of the Probate Code hereinbefore mentioned. Appellant likewise contends that the second order denying a motion for satisfaction of the judgment, "was improper because the Appellant offered to perform and did tender the stock in the form she held it at the time the judgment became final."

The respondent's brief answers these contentions by affirming that "Appellant was required to deliver 1,380 shares of the stock described in the judgment forthwith. This she did not do," and that "When delivery of the stock became impossible, Respondent was entitled to recover the money judgment." It is further argued that "The judgment was rendered in an action to establish title to the stock and was not wholly on a claim against the estate." Respondent also contends that "Appellant has cited no authority which permits her to deliver different property than that ordered delivered by the judgment."

In reference to the validity of the execution issued against the estate of Charles C. Truitt, deceased, the applicable rule is stated in 11B California Jurisprudence 349, as follows: "The property in the custody of the probate court is not subject to levy or forced sale, and any execution issued and sale thereunder are void. The statute (Probate Code, Section 730) is express that no execution shall issue upon a judgment against a representative on a money claim, nor shall such a judgment be a lien. . . . A judgment on a money claim against the representative is an establishment of the claim, and the mode of procedure is to file a certified transcript of the judgment in the administration proceedings." See, also, 11A Cal.Jur. 873; *Smith* v. *Reed,* 52 Cal. 345; *Estate of Wiley,* 138 Cal. 301 [71 P. 441].

*Hollyfield* v. *Geibel,* 20 Cal.App.2d 142, 148 [66 P.2d 755], cited by respondent in support of the contention that the

judgment in the present action "was not wholly on a claim against the estate," and hence that execution thereon was proper, is not factually comparable to the instant case. In the Hollyfield opinion, the court said: "It is true that a judgment which is rendered against an executor upon a mere claim for money against the estate of a decedent does not establish a lien for the satisfaction of the judgment against the property of the estate. . . . In the present case, however, the judgment which was rendered in the suit to quiet title was not founded on a claim for a mere money judgment against the estate. It was a suit to establish title to a sum of money which the court specifically found did not belong to the estate. In that suit the court granted the plaintiff a lien on the real property in the custody of the executor of the estate to secure payment of the specified sum of money belonging to plaintiff in which the estate had no title or right of possession. Under such circumstances the court of equity had a right to require the payment of that sum of money to the owner thereof without providing that it should be paid to her 'in due course of administration of the estate.' "

In the instant litigation the action was not one to quiet title to a sum of money, but to declare a trust in 1,380 shares of stock. The lower court did not find that there was a specific sum of money which did not belong to the estate, as it did in the Hollyfield case; nor did the judgment herein grant any lien to secure payment of any such specified sum. The terms of the judgment against appellant were that respondent "do have and recover . . . 1380 shares of the capital stock of the Dried Food Products Company, . . . and that said defendant is hereby ordered to transfer and deliver certificates representing said 1380 shares of stock to the plaintiff forthwith, or in case that said 1380 shares of stock are not delivered forthwith then that plaintiff do have and recover . . . the sum of . . . $5,520.00, the value thereof, together with interest as provided by law." The judgment further provided that respondent recover $1,817 with interest, representing dividends on the stock received by appellant, which latter sum has been paid.

The part of the judgment here in question, providing "that plaintiff do have and recover" the sum of $5,520, representing the value of stock which appellant could not deliver, can be considered as nothing other than a mere "judgment rendered against an executor or administrator, upon any claim for money, against the estate of his testator or intestate," in

the language of section 730 of the Probate Code. This being so, the matter comes squarely within the express proviso of that section which says, "No execution shall issue upon the judgment." It was therefore error for the court to deny appellant's motion to discharge the writ of execution. The law provides other machinery than that of an execution, for the enforcement of a judgment against an estate; the judgment in question, conclusively established "the validity of the claim for the amount of the judgment," as provided by section 730, but accomplished nothing more than that. Under such judgment respondent's only right was to require the appellant to pay, "in due course of administration, the amount ascertained to be due."

■ The appeal from the order denying defendant's motion for satisfaction of judgment, based upon appellant's contention that "In all fairness Appellant should have the right to satisfy the judgment by delivering to the Respondent the exact proceeds of the stock held at the time the judgment was rendered," must be resolved against such contention. The judgment herein was in no sense ambiguous, nor did it give appellant any option other than the one expressly provided for; appellant was ordered to deliver "forthwith," 1,380 shares of stock in "Dried Food Products Company," or in case such stock was not delivered forthwith, then respondent was to recover the value thereof, namely $5,520. Appellant did not deliver the specified stock "forthwith" or at all, but as is pointed out in respondent's brief, "She chose to retain it, to vote to dissolve the corporation, and to join some sort of a trust thereafter"; later tendering in satisfaction of the judgment something alleged to be the "proceeds" of the stock.

Unknown to the law is appellant's proposition that "she attempted to carry out the spirit of the judgment by tendering the exact proceeds of the 1380 shares and should not be penalized by something over which she had no control, to-wit: the dissolution of the holding company in the interim." The appellant, admittedly, "has no quarrel with Respondent's argument that where a judgment in a claim and delivery action directs delivery of personal property or its value to the plaintiff, the plaintiff is entitled to the value if the personal property is lost or destroyed," but seeks to distinguish the present case by affirming that "this is a case where the personal property was not lost or destroyed, but was tendered to the respondent in the form it was held by appellant at the time the judgment became final." Appellant has cited no

authority permitting a delivery of property different from that ordered in the judgment. To so hold in the present case would establish a dangerous precedent giving every judgment debtor the right to interpret a judgment in whatever manner seemed most favorable to the debtor's interests. Such a doctrine would tend to destroy the long recognized integrity of civil judgments.

The order denying appellant's motion to discharge the writ of execution is therefore reversed; the second order appealed from, denying the motion for satisfaction of judgment, is affirmed.

York, P. J., and White, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 31, 1947. Edmonds, J., and Schauer, J., voted for a hearing.